RICHARD D. EMERY
ANDREW G. CELLI, JR.
MATTHEW D. BRINCKERHOFF
JONATHAN S. ABADY
ILANN M. MAAZEL
ERIC HECKER
MARIANN MEIER WANG
SARAH NETBURN
KATHERINE ROSENFELD
O. ANDREW F. WILSON
ELIZABETH S. SAYLOR
KENNISHA A. AUSTIN
DEBRA L. GREENBERGER
ELORA MUKHERJEE

# EMERY CELLI BRINCKERHOFF & ABADY LLP

ATTORNEYS AT LAW
75 ROCKEFELLER PLAZA
NEW YORK, NEW YORK 10019

TELEPHONE
(212) 763-5000
TELECOPIER
(212) 763-5001
WEB ADDRESS
www.ecbalaw.com



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/11/2008

*By facsimile*

Honorable Shira A. Scheindlin
U.S. District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

RECEIVED
CHAMBERS OF
JUN
JUDGE SCHEINDLIN

Re:  *Casale v. Kelly, et al.*, No. 08 Civ. 2173 (SAS)

Dear Judge Scheindlin:

We write on behalf of plaintiffs. Pursuant to the Court's Individual Rule III.A, plaintiffs submit this letter requesting a pre-motion conference. Pursuant to Fed. R. Civ. P. 45, plaintiffs seek to file a motion to compel third-party the New York State Office of Court Administration ("OCA") to comply with a subpoena that plaintiffs served on OCA on May 13, 2008. On May 21, 2008, plaintiffs received a letter from OCA objecting to the subpoena. Since that date, plaintiffs and OCA have exchanged letters regrading the dispute but cannot resolve it.

I.  **Case Background**

On March 3, 2008, plaintiffs Paul Casale and Anthony Garcia commenced this putative class action to redress defendant the City of New York's violations of their Fourth, Fifth, and Fourteenth Amendment rights. Plaintiffs and the putative class members were wrongfully charged by the New York City Police Department ("NYPD") under a void subsection of New York's loitering statute, P.L. § 240.35. Specifically, on March 4, 2007, plaintiffs were wrongfully summoned and charged by NYPD officers with loitering in violation of P.L. § 240.35(7). Plaintiffs were charged (and strip-searched, and required to defend themselves in court) despite the fact that two decades ago, in 1988, the New York State Court of Appeals declared unconstitutional P.L. § 240.35(7), which provided that a person is guilty of "loitering" when he "loiters or remains in a transportation facility, or is found sleeping therein, and is unable to give a satisfactory explanation of his presence." *See People v. Bright*, 71 N.Y.2d 376, 526 N.Y.S.2d 66 (1988). Similarly, in 1983, the Court of Appeals declared unconstitutional P.L. § 240.35(3), which provided that a person is guilty of "loitering" when he "loiters or remains in a public place for the purpose of engaging, or soliciting another person to engage, in oral sexual

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 2

conduct, anal sexual conduct or other sexual behavior of a deviate nature." *See People v. Uplinger*, 58 N.Y.2d 936, 460 N.Y.S.2d 514 (1983). Notwithstanding *Uplinger* and *Bright*, the NYPD has continued to arrest, summons, charge and prosecute individuals such as plaintiffs for violations of P.L. § 240.35(3) and § 240.35(7). Through this action, plaintiffs seeks an appropriate remedial order to ensure an end to the utterly lawless enforcement of criminal statutes that were adjudicated unconstitutional in the 1980s.

## II.   OCA's Objections to Plaintiffs' Subpoena Lack Merit

Plaintiffs seek the following electronic information from OCA (including for each request, records sealed under N.Y.C.P.L. § 160.50 & 160.55): (1) records of all prosecutions of P.L. § 240.35(3) from 1983 to date contained in the Criminal Records and Information Management System ("CRIMS"); (2) records of all prosecutions of P.L. § 240.35(3) from 1983 to date contained in the Summons Automation Management System ("SAMS"); (3) records of all prosecutions of P.L. § 240.35(7) from 1988 to date contained in CRIMS; and (4) records of all prosecutions of P.L. § 240.35(7) from 1988 to date contained in SAMS.

Prior to service of the subpoena, plaintiffs contacted OCA to arrange for the production of this data adopting the same procedures (*i.e.*, for format and confidentiality) that were negotiated and agreed upon in *Wise v. Kelly, et al.*, 05 Civ. 5442 (SAS). In *Wise*, plaintiff's counsel and OCA successfully negotiated for the production of electronic data regarding wrongful enforcement of P.L. § 240.35(1). In this case, OCA rejected plaintiffs' proposals.

OCA objects to the subpoena because it claims that the information plaintiffs seek is not reasonable accessible due to undue burden and cost. OCA claims that it would require 140 hours of OCA employee time, and cost OCA approximately $6,300.00 in salary, to generate the records of enforcement. Given that there is an already established format from *Wise* for the data production, that this search is for live, current electronic records (not archived data or data on back-up tapes), and that what is required is a specific search for 2 subsections, it should not take 140 hours to produce this data. Plaintiffs request the opportunity to conduct discovery to test this assertion. Further, as this Court may recall, when the parties appeared before the Court for our initial conference on April 16, 2008, the Court rejected the City's very similar assertion that production of the City's BADS data for these subsections would be burdensome, since the City (like OCA) already knew how to complete this type of production from *Wise* and could easily repeat that programming process. Thus, OCA cannot meet its burden to show that discovery of the electronically stored information at issue is not reasonably accessible.

As a good-faith gesture (and despite the fact that under the *Zubulake* test, OCA would not prevail in a formal attempt to shift costs if litigated), on May 28, 2008, plaintiffs offered to pay OCA one-third of the costs identified by OCA, *i.e.*, one-third of the salary cost of $6,264 plus the cost of providing the media for the information. OCA rejected this offer.

OCA also claims that plaintiffs have access the same information sought in the subpoena from defendant the City of New York. OCA is simply incorrect. Plaintiffs cannot

access the information from any other source or from the defendants. OCA is in sole possession of the relevant electronic records concerning enforcement of the unconstitutional statutes. This includes summons data, case disposition data, and sentencing data. The "BADS" data produced by the City of New York relates solely to arrests. To the extent it includes any arraignment data, that data is incomplete. It does not include disposition and sentencing data. In addition, the City will not produce *any* data regarding summonses. As early as September 26, 2005, in its first discovery responses in *Wise/Brown*, the City refused to provide records of thousands of summonses and insisted that plaintiff seek those records from OCA. On March 10, 2006, defendants submitted multiple affidavits to this Court disclaiming all responsibility for keeping records of summonses issued by NYPD and insisting that Plaintiff seek these records from OCA. On March 23, 2006, counsel for the City claimed on the record that OCA maintained the only record of summonses. Indeed, faced with contempt proceedings in *Wise*, the City itself had to subpoena OCA for records of summonses that the City had issued through NYPD.

Thus, even if OCA could meet its burden under Rule 26 to show that the data is not reasonably accessible, the Court should still order production because plaintiffs can show good cause. Fed. R. Civ. P. 26(b)(2)(B). Plaintiffs' request to OCA is specific and narrowly tailored, and the information sought is not available from any other source. Both from a liability and damages perspective, and for class certification, the data is absolutely critical to the case. To litigate this action, plaintiffs need the discovery from OCA regarding the summons issued under the void subsections, the outcome of all the cases, and the sentencing data. Finally, the issues at stake are significant. Whether the NYPD has charged hundreds or thousands of people over the last two decades under void laws, and violated their constitutional rights, and what remedies are appropriate, are issues of paramount importance to all parties and to many New Yorkers.

OCA argues that the data regarding enforcement of P.L. § 240.35(3) is not relevant because the current plaintiffs were charged under P.L. § 240.35(7). But the complaint defines the putative class as follows: "all persons who were or will be wrongfully charged under a subsection of P.L. § 240.35 after that subsection was declared unconstitutional by the New York State Court of Appeals, and accordingly, who are threatened with future unlawful enforcement of an unconstitutional subsection of P.L. § 240.35." Complaint ¶ 20. The class is defined this way in order to finally put an end to the defendants' ongoing practice of enforcing various unconstitutional subsections of the loitering law against innocent people, in a single action, rather than piecemeal as has been the case so far. Data regarding enforcement of both subsection (3) and subsection (7) is therefore plainly relevant.

Finally, OCA raises concerns about the confidentiality and privacy interests implicated by the production of the electronic records. Plaintiffs take these interests extremely seriously. We have repeatedly proposed to OCA that the parties enter into the identical (and stringent) court-ordered confidentiality order agreed upon in *Wise* to protect the identical type of records. Plaintiffs' counsel now has a long proven track record of responsibly handling sensitive data produced by OCA pursuant to a court-ordered protective order. There is no reason to think a similar protective order would not adequately protect the confidentiality interests here. In addition, the production of the data to plaintiffs is for the purpose of vindicating the rights of

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 4

those individuals who were wrongfully arrested or summonsed under unconstitutional laws, thus counseling even more strongly in favor of access.

Plaintiffs submit that our offers to OCA detailed above (to share the costs of the production and to enter into a stringent Protective Order) are more than sufficient to meet OCA's concerns. OCA has refused to accept these reasonable accommodations. For this reason, plaintiffs are left with no choice but to move to compel OCA's compliance with the subpoena. We respectfully request that the Court schedule a pre-motion conference on the motion to compel at the Court's earliest convenience.

Sincerely,

Katherine Rosenfeld

c: Shawn Kerby, Counsel for the New York State Office of Court Administration
(by facsimile)
Rachel Seligman Weiss, Assistant Corporation Counsel (by facsimile)

*Plaintiffs' request for a pre-motion conference is granted. A conference before the Court is scheduled for Tuesday, June 17, 2008, at 4:30 p.m.*

Date: June 10, 2008

SO ORDERED.

Shira A. Scheindlin, USDJ