ORIGINAL

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------X

PAUL CASALE and ANTHONY GARCIA,
on Behalf of Themselves and Others
Similarly Situated,

                Plaintiffs,

    - against -

RAYMOND W. KELLY, Commissioner of
the New York City Police Department
(NYPD); CITY OF NEW YORK;
JOHN/JANE DOES 1-50 (NYPD
Supervisory, Training and Policy
Personnel); and JOHN/JANE DOES 51-100
(NYPD police officers),

                Defendants.

-----------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: 25
DATE FILED: 6/1/09

**AMENDED**
**OPINION AND ORDER**

08 Civ. 2173 (SAS)

97458

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

        Paul Casale and Anthony Garcia ("named plaintiffs") assert that

Raymond W. Kelly, Police Commissioner of the New York City Police

Department ("NYPD"); the City of New York; and unnamed NYPD personnel

(collectively "defendants") have violated and continue to violate their Fourth,

Fifth, and Fourteenth Amendment rights and the rights of those similarly situated

– and have falsely arrested and maliciously prosecuted them – by enforcing

MICROFILMED
JUN – 3 2009 9:00 AM

1

provisions of New York State's loitering law declared unconstitutional over twenty years ago. This lawsuit addresses the legal consequences of an unlawful summons, the capability of a municipality to control its police and prosecutors, and the ability of the poor to bring collective actions.

Named plaintiffs now move to certify two classes pursuant to Federal Rule of Civil Procedure 23. Under Rule 23(b)(2), plaintiffs seek to represent a class consisting of "all persons who have been or will be arrested, charged, or prosecuted for a violation of New York Penal Law §§ 240.35(3) and/or 240.35(7) in New York City after those statutes were declared unconstitutional."[1] Under Rule 23(b)(3), named plaintiffs also seek to represent a class limited to those previously arrested, charged, or prosecuted within the statute of limitations period.[2] For the reasons that follow, named plaintiffs' motion is granted in full.

## I. BACKGROUND

### A. Enforcement of New York Penal Law Section 240.35(3)

New York Penal Law section 240.35(3) states, "A person is guilty of loitering when he [l]oiters or remains in a public place for the purpose of

---

[1]  Memorandum of Law in Support of Plaintiffs' Motion for Class Certification ("Pl. Mem.") at 2. *Accord* Complaint ¶ 20.

[2]  *See* Pl. Mem. at 2. *See also* Complaint ¶ 23.

2

engaging, or soliciting another person to engage, in oral sexual conduct, anal

sexual conduct or other sexual behavior of a deviate nature."  In 1983, the New

York Court of Appeals struck down the statute as unconstitutional, on the basis

that the"object of the loitering statute is to punish conduct anticipatory to the act

of consensual sodomy," which itself is not constitutionally punishable.[3]  Despite

judicial invalidation, the State of New York has not formally repealed this

provision.[4]

Between 1983 and 2007, the District Attorneys' Offices of the five

counties that make up New York City brought 4,750 prosecutions resulting from

arrests that included charges under section 240.35(3), of which  2,185 charged

only a violation of section 240.35(3).[5]  During that time period, 2,550 individuals

were convicted for violating the unconstitutional provision.[6]  Apart from

convictions, these prosecutions resulted in the issuance of 1,510 bench warrants,

---

[3]     *People v. Uplinger*, 58 N.Y.2d 936, 938 (1983).

[4]     *See* N.Y. Penal Law § 240.35(3).

[5]     *See* 12/8/08 Declaration of J. McGregor Smyth, Jr., plaintiffs'
attorney ("Smyth Decl.") ¶¶ 13, 15.  Although the Court of Appeals did not strike
down the law until February 23, 1983, the total likely includes prosecutions
initiated in the first two months of 1983.  This does not alter the fact that
prosecutions continued.

[6]     *See id.* ¶ 16.

payment of $69,516 in cash bail, sentences of $192,981 in fees, fines, and surcharges, and 16,396 court appearances.[7] Most recently, the Queens County District Attorney's Office brought a prosecution charging a violation of section 240.35(3) arising from a January 9, 2006 arrest.[8]

Apart from prosecutions, solely between 1999 and 2007 NYPD officers issued 9,693 summonses charging violations of section 240.35(3), resulting in the issuance of 5,391 bench warrants, sentences of $71,145 in fees, fines, and surcharges, and 21,576 court appearances.[9]  As of December 8, 2008, the most recent NYPD summons charging section 240.35(3) had been issued on November 20, 2008.[10]

### B.    Enforcement of New York Penal Law Section 240.35(7)

New York Penal Law section 240.35(7) states, "A person is guilty of loitering when he [l]oiters or remains in any transportation facility, or is found sleeping therein, and is unable to give a satisfactory explanation of his presence." In 1988, the New York Court of Appeals declared that provision unconstitutional

---

[7]    *See id.* ¶ 17.

[8]    *See id.* ¶ 18.

[9]    *See id* ¶¶ 22-23.  Older NYPD data has not been made available to plaintiffs.

[10]    *See id.* ¶ 24.

4

as well, finding it both unconstitutionally vague and "violative of a citizen's right not to answer questions posed by law enforcement officers."[11]   Despite judicial invalidation, the State of New York has not formally repealed this provision.[12]

Between 1988 and 2007, the District Attorneys' Offices of New York City filed ninety-one criminal prosecutions resulting from arrests for violations of section 240.35(7).[13]   Fifteen were brought only for violations of section 240.35(7), and twelve resulted in convictions for violating section 240.35(7).[14]   Apart from convictions, these prosecutions resulted in the issuance of twenty-seven bench warrants, payment of $500 in cash bail, payment of sentences of $3,130 in fees, fines, and surcharges, and 1,197 court appearances.[15] Most recently, the New York County District Attorney's Office brought a prosecution charging a violation of

---

[11]   *People v. Bright*, 71 N.Y.2d 376, 385-87 (1988).

[12]   *See* N.Y. Penal Law § 240.35(7).

[13]   *See* Smyth Decl. ¶ 27.  Although the Court of Appeals did not strike down the law until February 17, 1988, the total likely includes prosecutions initiated in the first two months of 1988.  Again, this does not alter the fundamental fact that prosecutions continued to be brought after the provision was declared unconstitutional.

[14]   *See id.* ¶¶ 29-30.

[15]   *See id.* ¶ 31.

5

section 240.35(7) arising from a November 7, 2005 arrest.[16]

Apart from prosecutions, between 1999 and 2007 NYPD officers issued 476 summonses charging violations of section 240.35(7), resulting in the issuance of 306 bench warrants, sentences of $3,310 in fees, fines, and surcharges, and 1,197 court appearances.[17]   As of December 8, 2008, the most recent NYPD summons charging a violation of section 240.35(7) was issued on July 12, 2008.[18]

## C.   Named Plaintiffs and Their Attorneys

Named plaintiffs Paul Casale and Anthony Garcia regularly spend time at the Port Authority Bus Terminal in New York City.[19]   Casale and Garcia allege that NYPD officers issued them summonses on March 4, 2007 for remaining in a transportation facility with no explanation of their presence, in violation of section 240.35(7).[20]   Within a month of the March 4 incident, police

---

[16]   See id. ¶ 32.

[17]   See id ¶¶ 36-37.

[18]   See id. ¶ 38.

[19]   See, e.g., 7/26/08 Deposition of Paul Casale ("Casale Dep.") at 151:3-25, 159:19-160:3, 230:16-231:10, Ex. F to 1/12/09 Declaration of Rachel Seligman Weiss, defendants' counsel ("Seligman Weiss Decl.") & Ex. A. to 1/26/09 Declaration of Debra L. Greenberger, plaintiffs' counsel ("Greenberger Decl.").

[20]   Complaint ¶¶ 4-5.  Although plaintiffs have not submitted evidence to confirm this assertion, defendants have not challenged the truth of this incident.

again approached Casale at the Port Authority, questioned him, asked for identification, and searched his person and belongings.[21]

Some time after he received the summons, Casale initiated a complaint with the Civilian Complaint Review Board ("CCRB") concerning the incident, but he ceased pursuing the complaint on the advice of counsel.[22]  Instead – in his own words – he brought the above-captioned lawsuit "against the City of New York for ticketing, arresting and harassing people for a statute that was declared unconstitutional in 1988."[23]

Casale is aware that a class action affects the rights of others who are not actively involved in the litigation.[24]  Casale is also aware that he has particular

---

See Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification ("Def. Mem.") at 13 (challenging named plaintiffs' standing to request prospective – but not retrospective – relief).  Garcia also verified the veracity of the factual allegations in the Complaint during his deposition. See 7/29/08 Deposition of Anthony Garcia ("Garcia Dep.") at 105:9-14, Ex. G to Seligman Weiss Decl. & Ex. B to Greenberger Decl.

[21]    See Casale Dep. at 102:4-22, 106:1-24.

[22]    See id. at 84:12-18, 85:7-24. See also id. at 87:3-16 (describing Casale's doubts concerning the impartiality of the CCRB).

[23]    Id. at 76:19-77:12.

[24]    See id. at 133:3-23.

duties as a class representative.[25] Although he admits that he did not attend an interview that the CCRB requested,[26] he has pursued this litigation despite fear of police retaliation and attended his scheduled deposition.[27] Casale is aware that he suffers from depression but has ceased treatment for this conditions, believing it has not been effective.[28] Casale is indigent and would not be able to pay attorneys' fees or costs without the aid of pro bono counsel.[29]

Garcia became involved in the lawsuit because he did not understand why the police enforce laws that are not in effect.[30] He recognizes that people other than himself are affected by this policy.[31] Garcia also acknowledged that he has a duty to remain involved in the lawsuit[32] and takes that responsibility

---

[25]    *Id.* at 121:21-25.

[26]    *See id.* at 85:7-24.

[27]    *See id.* at 93:9-94:2.

[28]    *See id.* at 20:9-20, 26:4-18.  Casale also believes that he suffers from paranoia, although he has not been diagnosed with the condition. *See id.* at 25:8-25, 26:19-25.

[29]    *See id.* at 138:7-140:12.

[30]    *See* Garcia Dep. at10:11-14, Ex. G to Seligman Weiss Decl. & Ex. B to Greenberger Decl. *See also id.* at 108:10-25 (questioning why the conduct for which he received a summons is a crime).

[31]    *See id.*

[32]    *See id.* at 57:11-14.

8

seriously.[33] Despite difficulties reading, Garcia reviewed the complaint twice prior to his deposition.[34]

Garcia is unaware of some technical aspects of the case, including the name of this Court, the name of the presiding judge, the name of the firm that employs his attorneys, the precise size of the proposed class, and the arrangement governing fees and costs.[35] Garcia suffers from what he describes as a "nervous condition," and as a result he has recently been unable to hold a job.[36] He has also experienced episodes of claustrophobia and chest pains.[37] Finally, Garcia was arrested in 2000 for cocaine possession, pled guilty, and served four years in prison.[38]

Named plaintiffs are represented by Emery Celli Brinckerhoff &

---

[33]   *See id.* at 100:17-22.

[34]   *See id.* at 10:2-8, 105:12-14

[35]   *See id.* at 82:3-9, 104:3-106:16. Garcia knows the names of his attorneys and the location of their office. *See id.* at 82:3-7.

[36]   *Id.* at 68:6-23.

[37]   *See id.* at 74:3-19 (claustrophobia); *id.* at 92:4-93:18 (chest pains).

[38]   *See id.* at 211:11-24, 214:10-16. Garcia served an additional seven months for violations of curfew conditions of his parole. *See id.* at 216:4-17. He was also arrested during the 1990s for driving without a license and drinking in public – both misdemeanors – and was sentenced to community service. *See id.* at 221:25-222:25.

Abady LLP, The Bronx Defenders, and the Law Office of Earl Ward.  Emery Celli

is "a preeminent civil rights firm" in the City of New York.[39]  The Bronx

Defenders is a defense organization in New York City that supplements its

criminal defense representation with broader services and impact litigation.[40]

Finally, Earl Ward is a civil rights and criminal defense attorney with over twenty

years of experience.[41]

### D.    Defendants' Attempts to End Enforcement

Plaintiffs initiated this lawsuit on March 3, 2008.  On April 21, 2008,

the NYPD sent a message to all precincts and commands requiring that officers be

informed at ten consecutive roll calls that sections 240.35(3) and

240.35(7) are unconstitutional and cannot be enforced via summons or arrest.[42]

The NYPD also changed its computer system so that charges pursuant to these

---

[39]     *Brown v. Kelly*, 244 F.R.D. 222, 233 (S.D.N.Y. 2007), *appeal pending sub nom.*, *Wise v. Kelly*, No. 07-3356 (2d Cir. argued Dec. 19, 2008).

[40]     *See* Press Release, N.Y. State Bar Ass'n, *Pioneer in Holistic Advocacy Wins State Bar's First Indigent Defense Outstanding Achievement Award* (May 31, 2007), *available at* http://www.nysba.org/AM/Template.cfm?Section=2007_Press_Releases_through_June&template=/PressRelease/PressReleaseDisplay.cfm&PressReleaseID=707&PressReleaseCategoryID=2.

[41]     *See* Civilian Complaint Review Board, New York City, *Earl Ward, Esq.*, http://www.nyc.gov/html/ccrb/html/ward.html.

[42]     4/21/08 FINEST Message, Ex. C to Seligman Weiss Decl.

provisions can no longer be processed.[43]  On May 1, 2008, defendants consented

to a stipulation requiring further notification to the Offices of the District

Attorneys of the five counties that make up New York City and the Criminal Court

of New York City and monthly reporting requirements concerning summons

issued pursuant to these sections.[44]  The required notifications were sent on May 9,

2008.[45]  Nonetheless, between May 2008 and December 2008, NYPD officers

issued thirty-six summonses charging violations of these provisions.[46]

### E.    Proposed Relief

Plaintiffs seek three forms of relief.  *First*, plaintiffs seek a broad

declaratory judgment establishing that defendants acted unlawfully by enforcing

sections 240.35(3) and 240.35(7) against plaintiffs.[47]  *Second*, on behalf of those

plaintiffs certified as part of a Rule 23(b)(2) class, named plaintiffs seek an

---

[43]    *See* Seligman Weiss Decl. ¶ 7.

[44]    *See* 5/1/08 Stipulation and Order, Ex. B to Seligman Weiss Decl.

[45]    *See* 5/9/08 Letter from Michael Cardozo, New York City Corporation
Counsel, to Robert M. Morgenthau, District Attorney, New York County, *et al.*,
Ex. D to Seligman Weiss Decl.; 5/9/08 Letter from Linda Donahue, Assistant
Corporation Counsel, to Hon. Juanita Bing-Newton, Administrative Judge,
Criminal Court of the City of New York, Ex. E to Seligman Weiss Decl.

[46]    *See* Smyth Decl. ¶ 10.

[47]    *See* Complaint Request for Relief ¶ 1.

11

injunction ordering city-wide remedial policies aimed at eliminating the

enforcement of sections 240.35(3) and 240.35(7) and expunging of plaintiffs'

criminal records relating to arrests, charges, prosecutions, or convictions pursuant

to those provisions.[48]  *Third*, on behalf of those plaintiffs certified as part of a Rule

23(b)(3) class, named plaintiffs seek both compensatory and punitive damages.[49]

## II.    APPLICABLE LAW

### A.    Rule 23(a)

Rule 23 of the Federal Rules of Civil Procedure governs class

certification.  "'Rule 23 is given liberal rather than restrictive construction, and

courts are to adopt a standard of flexibility."[50]  To be certified, a putative class

must first meet all four prerequisites set forth in Rule 23(a), commonly referred to

as numerosity, commonality, typicality, and adequacy.[51]

The numerosity requirement mandates that the class be "so numerous

---

[48]      *See id.* ¶¶ 2-3.

[49]      *See id.* ¶¶ 4-5.  Plaintiffs also broadly seek an award of costs and fees. *See id.* ¶ 6.

[50]      *Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997) (quoting *Sharif ex rel. Salahuddin v. New York State Educ. Dep't*, 127 F.R.D. 84, 87 (S.D.N.Y. 1989)).

[51]      *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008).

that joinder of all members is impracticable."[52]  Impracticable does not mean

impossible; joinder may merely be difficult or inconvenient, rendering use of a

class action the most efficient method to resolve plaintiffs' claims.[53]  Sufficient

numerosity can be presumed at a level of forty members or more.[54]  "However, an

estimate that is based on speculation is insufficient."[55]  Nevertheless, such

speculation is permitted in the case of prospective classes for injunctive relief on

behalf of those who will be harmed by future allegedly wrongful conduct, at least

when joined with a fixed class of individuals suffering current harm.[56]  Moreover,

the poverty of potential class members is a relevant factor when assessing the

---

[52]     Fed. R. Civ. P. 23(a)(1).

[53]     *See Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 244-45 (2d Cir. 2007).  *Accord Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) ("'[I]mpracticality' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class.").

[54]     *See Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (citing 1 *Newberg On Class Actions* § 3.05 (2d ed. 1985)).

[55]     *Russo v. CVS Pharmacy, Inc.*, 201 F.R.D. 291, 294 (D. Conn. 2001) (citing *Demarco v. Edens*, 390 F.2d 836, 845 (2d Cir. 1968)).

[56]     *See Boucher v. Syracuse Univ.*, 164 F.3d 113, 119 n.11 (2d Cir. 1999).

13

practicality of joinder.[57]

Commonality requires a showing that common issues of fact or law affect all class members.[58] "Commonality does not mandate that all class members make identical claims and arguments."[59] When "common questions do predominate, differences among the questions raised by individual members will not defeat commonality."[60]

"Typicality 'requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events[] and each class member makes similar legal

---

[57]   *See Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) (citing *McDonald v. Heckler*, 612 F. Supp. 293, 300 (D. Mass. 1985), *modified on other grounds*, 795 F.2d 1118 (1st Cir. 1986)).

[58]   *See* Fed. R. Civ. P. 23(a)(2).

[59]   *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992) (citing *Port Authority Police Benevolent Ass'n v. Port Authority*, 698 F.2d 150, 153-54 (2d Cir. 1983)).

[60]   *Civic Ass'n of the Deaf v. Giuliani*, 915 F. Supp. 622, 633 (S.D.N.Y. 1996). *Accord Daniels v. City of New York*, 198 F.R.D. 409, 417 (S.D.N.Y. 2001) (citing *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 56 (3rd Cir. 1994)); 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1764 (3d ed. 2008) ("To the extent that 'co-extensive' suggests that the representatives' claims must be substantially identical to those of the absent class members, it is too demanding a standard.").

14

arguments to prove the defendant's liability.'"[61]  Rather than focusing on the

precise nature of plaintiffs' injuries, the typicality requirement may be satisfied

where "injuries derive from a unitary course of conduct by a single system."[62]  A

lack of typicality may be found in cases where the named plaintiff "was not

harmed by the [conduct] he alleges to have injured the class"[63] or the named

plaintiffs' claim is subject to "specific factual defenses" atypical of the class.[64]

Adequacy demands that "the representative parties will fairly and

adequately protect the interests of the class."[65]  "Generally, adequacy of

representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic

to the interest of other members of the class and 2) plaintiff's attorneys are

---

[61]     *Central States*, 504 F.3d at 245 (quoting *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001)).

[62]     *Marisol A.*, 126 F.3d at 377.

[63]     *Newman v. RCN Telecom Services, Inc.*, 238 F.R.D. 57, 64 (S.D.N.Y. 2006).  *Accord Doe v. Chao*, 306 F.3d 170, 183 (4th Cir. 2002) (finding an absence of typicality where the "named claimants had not suffered 'injur[ies] similar to the injuries suffered by the other class members'" (quoting *McClain v. South Carolina Nat'l Bank*, 105 F.3d 898, 903 (4th Cir. 1997)).

[64]     *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006), *cert. denied*, 127 S.Ct. 2952 (2007).

[65]     Fed. R. Civ. P. 23(a)(4).

15

qualified, experienced and able to conduct the litigation."[66]  "[C]lass

representative status may properly be denied 'where the class representatives have

so little knowledge of and involvement in the class action that they would be

unable or unwilling to protect the interests of the class against the possibly

competing interests of the attorneys.'"[67]  However, the Supreme Court has

"expressly disapproved of attacks on the adequacy of a class representative based

on the representative's ignorance."[68]

Finally, the courts have added an "implied requirement of

ascertainability" to the express requirements of Rule 23(a).[69]  "[T]he requirement

that there be a class will not be deemed satisfied unless the class description is

sufficiently definite so that it is administratively feasible for the court to determine

---

[66]     *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 60
(2d Cir. 2000) (citing *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285,
291 (2d Cir. 1992)).

[67]     *Id.* at 61 (quoting *Maywalt v. Parker & Parsley Petroleum Co.*, 67
F.3d 1072, 1077-78 (2d Cir. 1995)).

[68]     *Id.* (citing *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 370-74
(1966)).  *Accord Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 344 (S.D.N.Y.
2004) (holding that inflexible application of the adequacy requirement "runs
counter to a principal objective of the class action mechanism – to facilitate
recovery for those least able to pursue an individual action").

[69]     *In re Initial Pub. Offering Secs. Litig.* ("*In re IPO*"), 471 F.3d 24, 30
(2d Cir. 2006).

16

whether a particular individual is a member."[70]   "'An identifiable class exists if its

members can be ascertained by reference to objective criteria.'"[71]

### B.      Rule 23(b)

If the requirements of Rule 23(a) are met, the court "must next

determine whether the class can be maintained under any one of the three

subdivisions of Rule 23(b)."[72]

#### 1.      Rule 23(b)(2)

Under Rule 23(b)(2), class litigation is appropriate where "the party

opposing the class has acted or refused to act on grounds that apply generally to

the class, so that final injunctive relief or corresponding declaratory relief is

appropriate respecting the class as a whole."[73]   Under the doctrine established by

---

[70]      7A Wright, Miller, & Kane, *supra*, § 1760.  *Accord In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389, 395 (S.D.N.Y. 2008) (quoting *Rios v. Marshall*, 100 F.R.D. 395, 403 (S.D.N.Y. 1983)).

[71]      *In re Fosamax*, 248 F.R.D. at 395 (quoting *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002)). *Accord id.* at 396 ("The Court also must be able to determine the class' membership '"without having to answer numerous fact-intensive inquiries."'" (quoting *Daniels v. City of New York*, 198 F.R.D. 409, 414 (S.D.N.Y. 2001))).

[72]      *McLaughlin v. American Tobacco Co.*, 522 F.3d 215, 222 (2d Cir. 2008).

[73]      The Advisory Committee Note suggests that in this context, "[d]eclaratory relief 'corresponds' to injunctive relief when as a practical matter it affords injunctive relief or serves as a basis for later injunctive relief."   1966

the Second Circuit's decision in *Galvan v. Levine*, certification of a Rule 23(b)(2)

class is unnecessary when "prospective 'relief will benefit all members of a

proposed class to such an extent that the certification of a class would not further

the implementation of the judgment.'"[74]

> Courts have focused on four factors in determining whether
> class certification is necessary under *Galvin*. *First*,
> notwithstanding the presumption that government officials
> will abide by a court's decision as to similarly situated
> individuals, an affirmative statement from the government
> defendant that it will apply any relief across the board
> militates against the need for class certification. *Second*,
> withdrawal of the challenged action or non-enforcement of
> the challenged statute militates against the need for class
> certification. *Third*, the type of relief sought can affect
> whether class certification is necessary. Courts have found
> that where the relief sought is merely a declaration that a
> statute or policy is unconstitutional, denial of class
> certification is more appropriate than where plaintiffs seek
> complex, affirmative relief. *Fourth*, courts also consider
> whether the claims raised by plaintiffs are likely to become
> moot, making class certification necessary to prevent the

Advisory Committee Note to Rule 23(b)(2).

[74]   *Berger v. Heckler*, 771 F.2d 1556, 1566 (2d Cir. 1985) (quoting
*Davis v. Smith*, 607 F.2d 535, 540 (2d Cir. 1978), *recalled and remanded on other
grounds*, 607 F.2d 540 (2d Cir. 1979)). *Accord Galvan v. Levine*, 490 F.2d 1255,
1261 (2d Cir. 1973) (Friendly, J.) (affirming denial of certification of a 23(b)(2)
class after the government "withdrew the challenged policy" and "stated it did not
intend to reinstate the policy").

action from becoming moot.[75]

## 2.    Rule 23(b)(3)

Under Rule 23(b)(3), certification is appropriate where "questions of

law or fact common to the members of the class predominate over any questions

affecting only individual members," and class litigation "is superior to other

available methods for the fair and efficient adjudication of the controversy."

> The matters pertinent to these findings include the class
> members' interests in individually controlling the
> prosecution or defense of separate actions; the extent and
> nature of any litigation concerning the controversy already
> begun by or against class members; the desirability or
> undesirability of concentrating the litigation of the claims
> in the particular forum; and the likely difficulties in
> managing a class action.[76]

"'[T]he predominance inquiry tests whether proposed classes are

sufficiently cohesive to warrant adjudication by representation.'"[77]   "It is a more

demanding criterion than the commonality inquiry under Rule 23(a)."[78]

_____

[75]    *Blecher v. Department of Housing Pres. & Dev.*, No. 92 Civ. 8760,
1994 WL 144376, at \*4-\*5 (S.D.N.Y. Apr. 19, 1994).

[76]    Fed. R. Civ. P. 23(b)(3)(A)-(D).

[77]    *In re Nassau County Strip Search Cases*, 461 F.3d 219, 225 (2d Cir.
2006) (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136
(2d Cir. 2001)).

[78]    *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, at 623-24
(1997)).

19

"Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."[79] In light of the procedural safeguards required in (b)(3) class actions,[80] Rule 23(b)(3)

> "encompasses those cases in which a class action would achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."[81]

"[R]egardless of whether the claim as a whole satisfies the predominance test," "courts may employ Rule 23(c)(4)(A) to certify a [(b)(3)] class on a designated issue."[82]

"[F]ailure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and 'should be the exception rather

---

[79]    *Id.* (citing *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 136).

[80]    *See* Fed. R. Civ. P. 23(c)(2)(B), (c)(3)(B), (e)(4).

[81]    *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 20 (2d Cir. 2003) (quoting 1966 Advisory Committee Note to Rule 23(b)(3)).

[82]    *In re Nassau County Strip Search Cases*, 461 F.3d at 230.

than the rule.'"[83]  "It is appropriate for the court to consider the 'inability of the poor or uninformed to enforce their rights and the improbability that large numbers of class members would possess the initiative to litigate individually.'"[84]

### 3.    Appropriate Subsection of Rule 23(b)

"Rule 23(b) begins by saying that an action 'may' be maintained as a class action when . . . a part of subdivision (b) ha[s] been satisfied; it does not say that the class *must* be certified under the *first* matching subsection."[85]  Although the text of subdivision (b)(2) addresses equitable relief, certification of a class seeking both equitable and legal relief may be appropriate "'in light of the relative importance of the remedies sought.'"[86]  The Second Circuit has instructed that in assessing whether subdivision (b)(2) applies, the first inquiry is whether "'even in the absence of possible monetary recovery, reasonable plaintiffs would bring the

---

[83]    *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 140 (quoting *In re S. Cent. States Bakery Prods. Antitrust Litig.*, 86 F.R.D. 407, 423 (M.D. La. 1980)).

[84]    *D'Alauro v. GC Servs. L.P.*, 169 F.R.D. 451, 458 (E.D.N.Y. 1996) (quoting *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974)).

[85]    *Jefferson v. Ingersoll Int'l, Inc.*, 195 F.3d 894, 898 (7th Cir. 1999).

[86]    *Parker*, 331 F.3d at 20 (quoting *Robinson*, 267 F.3d at 164).

suit to obtain the injunctive or declaratory relief sought.'"[87] The court's next inquiry is whether "'the injunctive or declaratory relief would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits."[88]

However, where a putative class seeks injunctive relief and significant monetary damages, due process concerns do not permit maintenance of a mandatory class action absent procedural safeguards.[89]  A court may therefore proceed in one of three ways.  The court may "certify[] the class under Rule 23(b)(3) for all proceedings," "certify a Rule 23(b)(2) class for the portion of the case addressing equitable relief and a Rule 23(b)(3) class for the portion of the case addressing damages," or "certify the class under Rule 23(b)(2) for both monetary and equitable remedies but exercise its plenary authority under Rules 23(d)(2) and 23(d)(5) to provide all class members with personal notice and opportunity to opt out, as though the class was certified under Rule 23(b)(3)."[90]

---

[87]    *Id.* (quoting *Robinson*, 267 F.3d at 164).

[88]    *Id.* (quoting *Robinson*, 267 F.3d at 164).

[89]    *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846-47 (1999).

[90]    *Lemon v. International Union of Operating Eng'rs*, 216 F.3d 577, 581-82 (7th Cir. 2000).  The Second Circuit has declined to address "the precise circumstances under which a putative class requesting both injunctive and monetary relief can be certified."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 146-47.

## C.    Standard of Proof

Plaintiffs bear the burden of demonstrating – by a preponderance of the evidence – that the proposed class meets the requirements described above.[91] This Court must "'assess all of the relevant evidence admitted at the class certification stage' when determining whether to grant a Rule 23 motion."[92] "[T]he obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement."[93]  However, "in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement."[94]

## D.    Designation of Case-Management Subclasses

"In conducting an action under [Rule 23], the court may issue orders that determine the course of proceedings or prescribe measures to prevent undue repetition or complication in presenting evidence or argument . . . [or] deal with

---

[91]    *See Teamsters Local 445*, 546 F.3d at 202.

[92]    *Id.* (quoting *In re IPO*, 471 F.3d at 42).

[93]    *In re IPO*, 471 F.3d at 41.

[94]    *Id.*

23

similar procedural matters."[95]  A case-management subclass may be "created

solely to expedite resolution of the case by segregating [a distinct legal] issue [that

is] common to some members of the existing [class]."[96]  Case-management

subclasses are "an appropriate procedural innovation under Rule 23(d),"[97] when

"there is no actual conflict among class members in the underlying claims

common to the entire class."[98]  When "the subclassification [is] appropriate under

Rule 23(d), it is unnecessary to evaluate it under Rule 23[(a)] for commonality,

numerosity, typicality, and adequacy of representation."[99]  On the other hand,

formal certification of subclasses pursuant to Rule 23(c)(5) "is the proper

---

[95]     Fed. R. Civ. P. 23(d)(1)(A), (E).

[96]     *American Timber & Trading Co. v. First Nat'l Bank*, 690 F.2d 781,
787 (9th Cir. 1982).  *Accord Marisol A.*, 126 F.3d at 379 ("Rule 23 gives the
district court flexibility to certify subclasses as the case progresses and as the
nature of the proof to be developed at trial becomes clear.").

[97]     *American Timber & Trading Co.*, 690 F.2d at 787.

[98]     Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 7:33
(4th ed. 2002).

[99]     *American Timber & Trading Co.*, 690 F.2d at 787 n.5.  *Accord
Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993) (suggesting that
a district court may craft subclasses to confront factual distinctions even when
only one plaintiff is named, which would necessitate disregarding the formal Rule
23 adequacy requirement); Newberg & Conte, *supra*, § 7:33 ("[T]he court can use
its general supervisory Rule 23(d) discretion over class actions to create a
convenient subclass for particular litigation purposes *without* formally designating
it as a Rule 23 subclass." (emphasis added)).

24

solution" "if a court discerns a conflict" among members of a proposed class[100] or

class members assert divergent claims based on non-overlapping factual

circumstances, harms, and systemic failures.[101]

## III.   DISCUSSION

### A.   Rule 23(a) Factors

#### 1.   Numerosity

Defendants first claim that named plaintiffs cannot prove that the

proposed classes are sufficiently numerous to warrant class certification without

conducting mini-trials to determine the appropriateness of including each potential

class member.[102]  This objection is frivolous and betrays a fundamental

misapprehension of the requirements of class certification.  Numerosity relates

solely to the size of the *proposed* class and the practicality of joinder.  Named

plaintiffs propose classes consisting of thousands of individuals named in

databases maintained by defendants, satisfying the numerosity requirement.[103]

---

[100]    *Boucher*, 164 F.3d at 118-19 (quoting *Payne v. Travenol Labs., Inc.*,
673 F.2d 798, 812 (5th Cir. 1982)).

[101]    *See Marisol A.*, 126 F.3d at 379.

[102]    *See* Def. Mem. at 12.

[103]    Although plaintiffs' proposed Rule 23(b)(2) class includes some
plaintiffs who "will be wrongfully charged" under section 240.35(3) or 240.35(7),
such prospective class members are permitted.

Moreover, joinder is particularly impractical for the individuals who form the portion of the class charged with violating section 240.35(7), as those arrested for loitering in a transit facility are likely to lack the resources or capability to press individual suits.  Thus the proposed classes satisfy the numerosity requirement of Rule 23(a)(1).

### 2.    Commonality

Defendants next challenge the commonality of the class claims on the basis that individual questions of fact predominate over common issues of law.[104] However, it is incontestable that a single issue of law dominates this case: whether defendants violated plaintiffs' Fourth, Fifth, and Fourteenth Amendment rights by enforcing provisions of the penal law long deemed unconstitutional.  Numerous secondary questions of law are also common to the class:

- Whether the arrest, detention, and prosecution of plaintiffs violated common law prohibitions on false arrest, false imprisonment, and malicious prosecution;

- Whether liability is appropriate against the City on the basis of supervisory

---

[104]    *See* Def. Mem. at 9-12.

liability or a custom, policy, or practice;[105]

- Whether clearly established law prohibited the conduct alleged, precluding a qualified immunity defense;[106]

- The appropriateness of proposed legal remedies – should this Court find against defendants – including municipal liability and punitive damages;[107] and

- The appropriateness of proposed injunctive remedies – should this Court find against defendants – including expungement of criminal records and an injunction against future enforcement of sections 240.35(3) and 240.35(7).

Similarly, numerous common questions of fact can be efficiently resolved through class adjudication, including:

- Whether defendants enforced or failed to prevent the enforcement of

---

[105]    *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 693-95 (1978).

[106]    *See In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008).  The question of whether a "reasonable person" would have been aware of such clearly established law is "an objective, not a subjective, test," allowing for resolution of this issue on a class-wide basis. *Id.* (citing *Moore v. Andreno*, 505 F.3d 203, 215-16 (2d Cir. 2007)).  If the legal landscape shifted at some point during the class period then a portion of the class could theoretically be decertified.

[107]    *See Smith v. Wade*, 461 U.S. 30, 56 (1983) (punitive damages); *Monell*, 436 U.S. at 693-95 (municipal liability).

sections 240.35(3) and 240.35(7);

- The existence of a widespread pattern, policy, or practice of enforcement of sections 240.35(3) and 240.35(7);

- Whether Commissioner Kelly possessed the necessary *mens rea* for liability resulting from his supervisory responsibilities;[108]

- Whether the City failed to train, supervise, and discipline the personnel in the NYPD and district attorneys' offices properly; and

- What protocols existed in the NYPD concerning enforcement of sections 240.35(3) and 240.35(7).

On the other hand, potentially individualized issues identified by defendants include the statute of limitations, qualified immunity, the causal link between the City of New York's policies and the alleged injuries, the mental state of arresting officers, and the factual circumstances of individual arrests. However, most of these issues can be resolved on a class-wide basis. The applicable statute of limitations may be determined as a matter of law; the class then may be limited to those individuals with a viable claim.[109]  Similarly, the

---

[108]    *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

[109]    Plaintiffs have requested this precise limitation in the instant motion. Nor have plaintiffs suggested that the statute of limitations should be tolled, despite defendants' argument that equitable tolling would require an

applicability of qualified immunity is "determined by reference to the case law

extant at the time of the violation" yielding "an objective, not a subjective, test"[110]

that is suitable for class-based adjudication. The existence of a causal link

between a policy permitting or failing to restrict enforcement of the statute and the

actual enforcement of that statute may also be determined on a city-wide basis.

Nor is an individualized assessment of the arresting officers' mental state

necessary to determine the validity of a substantive due process claim.[111] Finally,

---

individualized inquiry. *See* Def. Mem. at 10-11 (citing *Pinaud v. County of Suffolk*, 52 F.3d 1139 (2d Cir. 1995)).

[110] *In re County of Erie*, 546 F.3d at 229 (citing *Moore*, 505 F.3d at 215-16).

[111] *See Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999) (noting that "[s]ubstantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority"). Defendants assert that the Second Circuit's decision in *Natale* states, "'[O]nly a substantial infringement of state law prompted by personal or group animus, or a *deliberate* flouting of the law that trammels significant personal or property rights, qualifies for relief under § 1983.'" Def. Mem. at 7 (purporting to quote *Natale*, 170 F.3d at 263). *Natale* contains no such statement; it merely cites a decision of the D.C. Circuit that contains the falsely attributed quote. *See Natale*, 170 F.3d at 263 (citing *Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir. 1998)). Defense counsel is reminded that as an officer of the Court she holds an obligation of truth, candor, and accuracy. *See Oliveri v. Thompson*, 803 F.2d 1265, 1267 (2d Cir. 1986); N.Y. R. Prof'l Conduct 3.3(a)(1). Moreover, the D.C. Circuit's decision is limited to the District's failure to enforce a local regulatory provision, rather than the more serious accusation of a municipality's enforcement of an unconstitutional statute. Therefore, there is no need for an individualized determination as to whether each arresting officer deliberately flouted the law

29

plaintiffs' malicious prosecution claims do not require individualized analysis of the circumstances of every arrest.[112]

Whether plaintiffs' false arrest claims require individualized probable cause inquiries is a more difficult question. The Supreme Court's recent holding in *Devenpeck v. Alford* established that the "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."[113]  Probable cause is an absolute defense to most Fourth Amendment unlawful seizure claims, as well as New York common law false arrest and false imprisonment claims.[114]  However, this does not demand the denial

---

when enforcing the unconstitutional loitering provisions.

[112]     *See Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999) (noting that probable cause to initiate a prosecution is distinct from probable cause to arrest).  Moreover, the malice element of a malicious prosecution claim generally does not require an individualized inquiry into the state of mind of the charging officer or prosecutor.  *See Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 131 (2d Cir. 1997) (noting that "lack of probable cause generally raises an inference of malice sufficient to withstand summary judgment" (citing *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996))).

[113]     543 U.S. 146, 153 (2004).

[114]     *See Herring v. United States*, 129 S. Ct. 695, 698 (2009) (Fourth Amendment); *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)) (false arrest).  *See also Jenkins v. City of New York*, 478 F.3d 76, 88 n.10 (2d Cir. 2007) (noting that "[f]alse arrest and false imprisonment are largely synonymous") (citing 59 N.Y. Jur. 2d *False Imprisonment & Malicious Prosecution* § 1 (2007)).

of class certification. It is implausible that in more than a *de minimis* number of cases did police officers have probable cause to arrest a plaintiff for *another* crime but chose solely to charge violations of an unconstitutional provision. Nor have defendants presented evidence to that effect. If such hypothetical "factual distinctions could preclude findings of commonality and typicality under Rule 23(a), they would be the death knell for class actions challenging the systemic enforcement of an unconstitutional statute."[115] Although defendants might welcome this outcome, "[t]his is an unacceptable result."[116] Where plaintiffs' "'injuries derive from a unitary course of conduct by a single system,'" the possibility that potential defenses might apply differently to individual plaintiffs – absent additional evidence – is trumped by the commonality of the central claim.[117]

---

[115]    *Brown*, 244 F.R.D. at 230.

[116]    *Id.* (citing *Caifrano v. Tamaski*, 442 U.S. 682, 701 (1979)).

[117]    *Daniels v. City of New York*, 198 F.R.D. 409, 417 (S.D.N.Y. 2001) (quoting *Marisol A.*, 126 F.3d at 377). Similar claims on behalf of a class of individuals prosecuted under a different unconstitutional loitering provision are presently before the Second Circuit. *See Wise v. Kelly*, No. 07-3356 (argued Dec. 19, 2008). Needless to say, this Court will modify the instant order if necessary to conform to the Circuit's decision. Moreover, these potential defenses will inevitably be addressed on a class-wide basis during merits adjudication. This allows the common questions of law and fact to be answered in an efficient manner. Should factual circumstances relevant to a particular inquiry differ throughout the class, the Court will either decertify particular claims or subdivide the class. *See General Motors Corp. v. City of New York*, 501 F.2d 639, 661 (2d

Nevertheless, it is important to address the effect of particular factual

distinctions within the proposed class. *First*, the Fourth Amendment claims of

individuals who were charged solely under the unconstitutional loitering

provisions are somewhat different from the claims of those who were arrested or

charged for violating both the void loitering provisions *and* other penal laws.

*Second*, the malicious prosecution claims of individuals against whom a criminal

proceeding was initiated are analytically distinct from those who were arrested

but never prosecuted.[118]

Divisions within a portion of the claims advanced by a proposed class

require the Court to designate case-management subclasses rather than to deny

class certification entirely.  Here the proposed class may be divided into four

---

Cir. 1974) ("[N]othing prevents the district court, upon presentation of evidence,
from concluding at a later point that the action must be decertified.").

[118]   "[T]he initiation or continuation of a criminal proceeding against
plaintiff" is a necessary element of a malicious prosecution claim under New York
law. *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) (citations omitted).
Defendants also contend that Fourth Amendment and false arrest claims differ
depending on whether a plaintiff was merely issued a summons or was prosecuted.
*See* Def. Mem. at 5.  This analysis is not nearly as straightforward as defendants
contend. *See, e.g.*, *Murphy*, 118 F.3d at 946 (addressing Fourth Amendment
seizure claims based on issuance of a summons without confinement).  However,
as this division within the proposed class is identical to the division concerning
the malicious prosecution claim, there is no need to address the merit of this
contention at the class certification stage.

32

case-management subclasses:

1.    All individuals arrested, or prosecuted by a DAO, charged solely for

      violating N.Y. Penal Law § 240.35(3) or § 240.35(7), and not charged with

      other criminal offenses arising out of the same incident.

2.    All individuals arrested, or prosecuted by a DAO, charged for violating

      N.Y. Penal Law § 240.35(3) or § 240.35(7), and also charged with other

      criminal offenses arising out of the same incident.

3.    All individuals issued summonses, charged solely for violating N.Y. Penal

      Law § 240.35(3) or § 240.35(7), and not charged with other criminal

      offenses arising out of the same incident.

4.    All individuals issued summonses, charged for violating N.Y. Penal

      Law § 240.35(3) or § 240.35(7), and also charged with other criminal

      offenses arising out of the same incident.

            Commonality does not require absolute uniformity within the class,

and the use of case-management subclasses will allow this Court to address legal

distinctions relevant to plaintiffs' claims. The distinctions discussed above do not

create a conflict of interest between the subclasses, which would have necessitated

separate analysis for each subclass under the Rule 23(a) factors. Moreover, the

claims raised by all plaintiffs – as well as the alleged systemic failures that

33

plaintiffs assert caused their injuries – are uniform.  Thus the most efficient way to address plaintiffs' claims is through the use of a single class subdivided into four case-management subclasses.  Overall, the proposed class meets the commonality requirement of Rule 23(a)(2).

### 3.    Typicality

Defendants primary challenge to the typicality of named plaintiffs' claims is that neither were given summonses for violating section 240.35(3).  However, defendants fail to indicate any legal difference between the claims of those putative class members charged with violating section 240.35(7) and those charged with violating section 240.35(3).  Both groups claim the same constitutional violations and torts resulting from being charged with violating a law previously declared unconstitutional.  Moreover, there is no evidence of any factual distinction between the two subsections concerning enforcement or training policies.  Therefore, named plaintiffs satisfy the typicality requirement of Rule 23(a)(3).

### 4.    Adequacy

Defendants also vociferously argue that named plaintiffs are not adequate class representatives.  Named plaintiffs are not flawless individuals.  As discussed above, Casale has a history of mental illness, and Garcia has spent time

34

in correctional facilities as a result of drug use. However, these characteristics in no way render named plaintiffs interests antagonistic to the interests of the absent class members. Rather, plaintiffs have demonstrated admirable dedication to the pursuit of this lawsuit. Casale sought out representation and has pursued his claims *despite* a fear of retaliation. Garcia reviewed the complaint twice before attending his deposition *despite* difficulties reading. Casale declared that he decided to pursue the lawsuit "because [h]e felt that what happened to [him] was a grave injustice and it is something that . . . shouldn't be happening to people. It shouldn't be allowed to continue."[119] Plaintiffs' knowledge of the suit is also more than sufficient to allow them to serve as class representatives, particularly in light of their professed dedication to the case and the assistance of experienced advocates.

Frankly put, defendants' assault on named plaintiffs' capability to represent the interests of similarly situated individuals is disrespectful and blatantly self-serving. It is irrelevant that Casale suffers from depression and believes he has suffered incidents of paranoia. It is also irrelevant that Garcia was once hospitalized with chest pains or had a test result indicating a possibility of untreated diabetes. It is further irrelevant that both named plaintiffs were unaware

---

[119]    Casale Dep. 93:16-19.

of potential liability for defendants' fees and costs, particularly as plaintiffs'

counsel are likely paying the costs of this action.  And the fact that Garcia did not

know my name is only interesting to defendants' counsel.  What is relevant is that

these characteristics and ailments are typical of individuals who tend to be victims

of the enforcement of unconstitutionally vague statutes – the vagabonds, the

homeless, and the destitute – who often lack the resources to enforce their

rights.[120]  If individuals like Casale and Garcia were ineligible to represent a class,

the claims of those even worse off would inevitably go unheard.  Therefore,

named plaintiffs meet the adequacy requirement of Rule 23(a)(4).[121]

---

[120]    *Cf. Noble*, 224 F.R.D. at 344 ("[E]ven though Nunez arguably lacks
the ability effectively to supervise class counsel, a rigid application of this
requirement is inappropriate where, as here, the class comprises relatively
low-skilled laborers.").

[121]    Defendants also contend – in a footnote on the last page of their brief
– that the Bronx Defenders could theoretically be called as witnesses or brought in
as third-party defendants based on their representation of some plaintiffs in
criminal proceedings brought pursuant to section 240.35(3) or 240.35(7).  *See* Def.
Mem. at 25 n.29.  As this Court stated in *Brown v. Kelly*, defendants' attempt to
protect the interests of the class by impugning plaintiffs' attorneys' adequacy "is
as ironic as it is unconvincing." 244 F.R.D. at 233.  There is no evidence before
this Court that the Bronx Defenders defended *any* individuals charged with
violating either provision.  Moreover, plaintiffs are also represented by Emery
Celli Brinckerhoff & Abady, as well as Earl Ward, who are eminently qualified to
represent plaintiffs without the assistance of the Bronx Defenders, should a
conflict somehow develop.  Plaintiffs' counsel undeniably meet the adequacy
requirement of Rule 23(a)(4).

## 5.   Ascertainability

Defendants finally argue that the proposed class fails the requirement of ascertainability.[122] Specifically, defendants assert that the class definition is "overbroad" because questions of membership would require mini-hearings. However, defendants conflate merits questions with the very simple class definition provided by plaintiffs. The proposed class does not consist of every individual who has a valid claim against defendants. Rather, the proposed classes consists of "all persons who have been or will be arrested, charged, or prosecuted for a violation of New York Penal Law §§ 240.35(3) and/or 240.35(7) in New York City after those statutes were declared unconstitutional" and a second class, using the same definition, limited to those arrested, charged, or prosecuted within the applicable statute of limitations.

Class members may be readily identified using these objective criteria along with records maintained by the City and the Office of Court Administration. Ascertainability requires no larger inquiry.

## B.   Rule 23(b)(2) Class[123]

---

[122]   *See* Def. Mem. at 3-8.

[123]   Plaintiffs have requested that this Court certify both a Rule 23(b)(2) class and a Rule 23(b)(3) class in order to achieve both equitable and legal relief. This procedural route avoids the due process concerns raised by the inclusion of

It is indisputable that named plaintiffs have alleged that defendants have "acted or refused to act on grounds that apply generally to the class" by enforcing sections 240.35(3) and 240.35(7), by failing to implement training programs necessary to prevent unlawful enforcement, and by refusing to expunge criminal records related to the enforcement of sections 240.35(3) and 240.35(7) and refund fees and fines collected pursuant to those prosecutions.[124]  Since the provisions were declared unconstitutional, defendants have enforced them more than 15,000 times.

Nevertheless, defendants challenge the certification of a Rule 23(b)(2) class on the basis that prospective relief is inappropriate now that defendants have entered a stipulation barring continued enforcement of sections 240.35(3) and 240.35(7) and have instituted procedures intended to prevent future enforcement.[125]  Although cloaked in the language of standing, at the class certification phase such arguments are more properly addressed under the analytic

---

monetary relief under the framework of a (b)(2) class.  Therefore, this Court will analyze the request for class certification under the standards for both categories of class action.

[124]    Fed. R. Civ. P. 23(b)(2).

[125]    *See* Def. Mem. at 18-20.

rubric stemming from *Galvin*.[126]

The first *Galvin* factor – the government's commitment to apply requested relief on a class-wide basis – weighs in favor of class certification. Although defendants entered into a stipulation in May 2008 barring enforcement of sections 240.35(3) and 240.35(7) city-wide, there has been no similar agreement with regard to other forms of injunctive relief requested by plaintiffs. Although likely a secondary concern, expungement alone would form a sufficient basis for certification of a (b)(2) class.

The second *Galvin* factor – non-enforcement of the challenged statute – also militates for class certification. Defendants must first be commended for their good faith efforts to reduce enforcement via notification of police officers and modification of computer systems. Nevertheless, since defendants entered the May 2008 stipulation, thirty-six summons have been issued charging violations of section 240.35(3) or 240.35(7). Although perfection cannot be demanded of the nation's largest police force, thirty-six incidents is simply too many for this Court

---

[126]    Defendants' use of standing as a lens for analysis leads them to argue a number of merits issues. For example, defendants argue that named plaintiffs lack standing to challenge continued enforcement of sections 240.35(3) or 240.35(7) because "it cannot be said that there exists a current municipal policy or practice of enforcing the unconstitutional subsections." Def. Mem. at 20. This question of fact is not properly before the Court on a motion for class certification.

to conclude that the problem has been solved.

The third *Galvin* factor – the complexity of the relief sought –
additionally weighs in favor of class certification. Plaintiffs seek the institution of
a complex monitoring system, as well as affirmative relief in the form of
expungement. Thus denial of (b)(2) class certification is less appropriate than if
plaintiffs had merely requested declaratory relief.

Finally, the fourth *Galvin* factor – the potential for plaintiffs' claims
to be rendered moot – weighs against class certification. As plaintiffs request
more than simply the cessation of enforcement of the unconstitutional provisions,
their claims cannot be rendered moot, regardless of whether enforcement is
eliminated entirely. Nevertheless, this fourth factor is insufficient to overcome the
other factors weighing in favor of class certification. Therefore, plaintiffs' request
for certification of a 23(b)(2) class is granted.

## C.    Rule 23(b)(3) Class

Defendants argue that certification of an Rule 23(b)(3) class would be
inappropriate, raising the same issues of law and fact named in their challenge to
commonality under Rule 23(a)(2).[127]   Although predominance is a "more

---

[127]    *See* Def. Mem. at 21-25.

40

demanding criterion than . . . commonality,"[128] the shared issues of law and fact

laid out in the discussion of commonality are also sufficient to demonstrate

predominance.  As set forth above, there are many legal and factual issues

common to all class members.  Although factual distinctions exist among potential

class members, the parade of mini-trials predicted by defendants will not be

necessary to manage a (b)(3) class.  Rather, necessary distinctions have been

drawn through the certification of subclasses.  The fact that some subclasses may

prevail on more claims than others "does nothing to alter the fundamental

cohesion of the proposed class, which is the central concern of the predominance

requirement."[129]  The Second Circuit recently held in a similar Fourth Amendment

class action that, "[i]n light of the pervasive character of the common liability

issues and the admitted *de minimis* nature of individualized liability issues," a

district court had abused its discretion by finding that individual issues

predominated.[130]  This Court will not repeat that mistake.

---

[128]    *In re Nassau County Strip Search Cases*, 461 F.3d at 225.

[129]    *Id.* at 229.

[130]    *Id.  Accord In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 146 (holding that where plaintiffs are "aggrieved by a single policy of the defendants," the action "presents precisely the type of situation for which the class action device is suited").

Moreover, class litigation is undoubtedly the superior, economical method of adjudication.  Class members have demonstrated no interest in individually controlling the prosecution of separate actions, and no parallel litigation has commenced.  There is no difficulty litigating this case in this particular forum, and although there may be some difficulty locating all absent class members, such management issues are insufficient to preclude class certification.  Moreover, it is likely that many individuals previously arrested or prosecuted under sections 240.35(3) and 240.35(7) are unaware that the provisions were unconstitutional and may have accepted plea bargains to terminate criminal proceedings as quickly as possible.[131]  Perhaps most importantly, insofar as Casale and Garcia are representative of the class of individuals charged with violations of sections 240.35(3) and 240.35(7), their economic disadvantage renders it improbable that large numbers of class members are capable of litigating

---

[131]    This common sense observation is not mere speculation.  *See, e.g.*, Daniel Givelber, *Punishing Protestations of Innocence: Denying Responsibility and Its Consequences*, 37 Am. Crim. L. Rev. 1363, 1395 (2000) ("Available data confirms the common sense proposition that not all guilty pleas are accurate."); John L. Barkai, *Accuracy Inquiries for All Felony and Misdemeanor Pleas: Voluntary Pleas but Innocent Defendants?*, 126 U. Pa. L. Rev. 88, 96 (1977) (questioning whether guilty pleas are confined to guilty defendants).

individually.[132]

## IV.   CONCLUSION

For the foregoing reasons, plaintiffs' motion for class certification is granted.  Specifically, pursuant to Federal Rule of Civil Procedure 23(b)(2), a class is certified consisting of all persons who have been or will be arrested, charged, or prosecuted for a violation of section 240.35(3) or 240.35(7) in New York City after those statutes were declared unconstitutional.  Pursuant to Rule 23(b)(3), a class is certified consisting of all persons who have been arrested, charged, or prosecuted for a violation of either section 240.35(3) or 240.35(7) in New York City within the applicable statute of limitations.  For the purpose of case management, the following subclasses are established pursuant to Rule 23(d) to address potential defenses:

1.    All individuals arrested, or prosecuted by a DAO, charged solely for violating N.Y. Penal Law § 240.35(3) or § 240.35(7), and not charged with other criminal offenses arising out of the same incident.

---

[132]    Insofar as section 240.35(3) has been used to harass gay men seeking to engage in consensual sexual activity, *see* William N. Eskridge, Jr., *Challenging the Apartheid of the Closet: Establishing Conditions for Lesbian and Gay Intimacy, Nomos, and Citizenship, 1961-1981*, 25 Hofstra L. Rev. 817, 860-61 (1997) (citing N.Y. Penal L. § 240.35(3)), it is likely that some potential plaintiffs would not choose to come forward individually to publicly challenge past prosecution.  This does not lessen the gravity of their claims.

43

2.      All individuals arrested, or prosecuted by a DAO, charged for violating

N.Y. Penal Law § 240.35(3) or § 240.35(7), and also charged with other

criminal offenses arising out of the same incident.

3.      All individuals issued summonses, charged solely for violating N.Y. Penal

Law § 240.35(3) or § 240.35(7), and not charged with other criminal

offenses arising out of the same incident.

4.      All individuals issued summonses, charged for violating N.Y. Penal

Law § 240.35(3) or § 240.35(7), and also charged with other criminal

offenses arising out of the same incident.

The Clerk of the Court is directed to close this motion (Docket Number 16).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            June 1, 2009

44